# Philadelphia and Reading R. R. Co. *versus* Carr.

90 505
139 274

1. It is not always contributory negligence *per se* for a person to attempt to cross a railroad track without waiting until a train, which has just passed, has gone so far as to leave unobstructed the view of another train approaching upon a parallel track in a contrary direction.

2. A. was walking upon the street of a city which was intersected at an angle by several parallel lines of railroad. On nearing the intersection, A. perceived a train approaching on one of the tracks, and stopped until it had passed. When the last car had gone by, she looked both ways and also listened, but neither saw nor heard anything to alarm her, and accordingly, when the rear of the train was about a car's length off, attempted to cross. While doing so, she tripped and fell upon the track next beyond that upon which the train had just passed, and after lying there prostrate about fifteen seconds, was run over and injured by a train running upon that track in the opposite direction from the train which had just passed. A.'s view of the train by which she was injured was totally cut off by the train which had just passed. The rear car of the last named train passed the engine of the first named train about three hundred feet from the place of the accident. In an action by A. against the railroad company to recover damages for her injuries, the defendant requested the court to charge that the plaintiff had been guilty of contributory negligence in attempting to cross while the train which had just passed prevented her seeing the train by which she was injured. The court declined to so charge, but left the question of the plaintiff's contributory negligence to the jury. *Held*, under the circumstances, that this was not error.

January 31st 1882.  Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas No. 2, of *Philadelphia county :* Of July Term 1881, No. 117.

Case, by Patrick J. Carr and Mary Ann, his wife, in her right, against the Philadelphia and Reading Railroad Company, to recover damages for injuries suffered by the said Mary Ann Carr, caused, as alleged, by the negligence of the defendant's servants.

On the trial, before Hare, P. J., the following facts appeared :—On the evening of June 2d 1878, between half-past nine and ten o'clock, the plaintiff, Mary Ann Carr, accompanied by her uncle, Thomas C. Meehan, was walking westwardly on Diamond street, in the outskirts of the city of Philadelphia, approaching the point where it is crossed by the tracks of the Germantown branch of the defendant's railroad.  Diamond street is crossed diagonally by four parallel sets of tracks, the two centre ones being the main tracks and the outside ones being sidings.  These tracks extend northwardly from Diamond street in a slight curve, but practically in a straight line for several squares or nearly two thousand feet.  Beyond that is a considerable curve in the road.

When the plaintiff arrived at the railroad crossing, she stopped, looked and listened, and heard and saw a train approaching from the city, running northward.  She stopped and allowed this train to pass.  As the last car passed the crossing, she again looked and listened, and, neither seeing nor hearing another train, started to cross the tracks.

At the moment she started, the rear end of the train which had just passed was about a car length distant.  While in the act of crossing the westwardly main track, she caught her foot or slipped and fell, and within ten or fifteen seconds, her foot was run over and cut off by a train running southwardly from Germantown towards the city, at a very rapid rate.  The evidence showed that had it not been for the up train, she would have seen the headlight of the engine of the train approaching in the opposite direction.  This engine passed the rear end of the up train at a point about one hundred yards from the crossing.  The engineer of the down train testified that his engine was about thirty feet from the plaintiff when she fell.  The plaintiff's uncle, who was with her at the time of the accident, was not called as a witness.

The defendant's counsel presented, inter alia, the following points :—

" 3. That a traveler intending to cross a railroad is bound to presume that a train is approaching, or if the railroad be a double track railroad, that a train is approaching in each direc-

[Philadelphia & Reading R. R. Co. v. Carr.]

tion, and it is his or her duty to stop and look both up and down the track and listen for approaching trains ; an omission to do so is negligence, and is an absolute bar to any recovery by such a person in case of a collision.  *Answer.* Instead of saying that a traveler is bound to presume that a train is approaching in either direction, I would say that as a train may be approaching in either direction, he should act as if that possibility or probability were a reality.  I affirm the point as thus qualified.

"4. The fact that a traveler stops and waits until a passing train gets by does not absolve him or her from looking and listening for trains approaching upon the other track in an opposite direction, and a traveler waiting for a train passing in one direction must wait sufficiently long so that that train shall not prevent him or her seeing a train approaching in an opposite direction.  If, therefore, the jury believe that Mrs. Carr, after stopping east of the railroad at Diamond street while the out train was passing, started across at a time when that train prevented her seeing the incoming train, she was guilty of negligence, and cannot recover.  *Answer.* I have already told you that it was Mrs. Carr's duty on approaching the track with a view of crossing it, to look and listen, to look in both directions, and listen for the approach of trains on either side, and I also said, or it was a necessary inference from it, that if she was delayed, as she was delayed in this case, by any cause—the approach of the up train in the case in hand—it would be her duty again to look in both directions and listen before setting out.  I am asked to say to you, however, that if under those circumstances a train which passed up the road shut out any portion of the road from view, it would be her duty to wait until that obstacle to vision was removed, and that if she did not do so, it would necessarily be negligence, and preclude her recovery.  What I say is, that it would have been a wise and proper precaution as the event shows.  Whether the omission of that precaution be negligence would depend upon circumstances, and I am not willing to take upon myself the responsibility of saying that under the circumstances in this case she would necessarily be guilty of negligence in not waiting until the view of the other track was entirely clear.  That is for the jury to consider.  If the jury find that she was negligent, then the consequence would follow which has been already stated."

The charge of the court was not contained in the bill of exceptions, and was not printed.

Verdict and judgment for the plaintiffs for $8,000.  The defendant company took this writ of error, the only assignment of error being the answer of the court to its fourth point.

*Thomas Hart, Jr.,* for the plaintiff in error.—The duty of one about to cross a railroad, to stop, look and listen, is admitted. In the case of a double-track railroad, it is a necessary inference from the rule that if a foot traveler stops for a train to pass in one direction, he must not only look again in both directions, but he must wait until the train just passed has proceeded a sufficient distance not to block his vision of the other track; otherwise, looking is of no use. It has been decided that a permanent obstacle, obstructing a view of the track will not relieve one about to cross from the duty of looking at a place where he can see up or down the track: Central R. R. Co. of New Jersey *v.* Feller, 3 Norris 226; R. R. Co. *v.* Beale, 23 P. F. Smith 504.

There is no difference in principle between a permanent obstacle to the view and a moving one, so long as the latter continues to be an obstacle. In the one case, the obstacle is one of place, in the other, it is one of time; and as in the one, the passenger must look at a place where there is no obstruction, so in the other, he must wait until the moving and temporary obstruction be removed: Werner *v.* R. R. Co., 8 Norris 59; Penna. R. R. Co. *v.* Fortney, 9 Norris 323.

*Daniel Dougherty,* for the defendant in error.—The plaintiff below performed her whole duty. The court cannot say, as a matter of law, that after waiting for one train to pass, and after then looking in both directions, she was bound to wait an indefinite time, because there might be a train coming in the opposite direction at an uncertain distance: Phila. and Trenton R. R. Co. *v.* Hagan, 11 Wright 246. At so dangerous a crossing, within the city limits, the railroad company should provide efficient safeguards, and not rely on the court to cast all the responsibility upon travelers on the public streets: Phila. & Reading R. R. Co. *v.* Killips, 8 W. N. C. 526.

Mr. Justice GREEN delivered the opinion of the court, February 20th 1882.

The rule which requires of one who is about to cross the track of a railroad, that he shall stop and look both ways and listen before stepping on the track is a wise and salutary rule. If it were really observed in every instance, accidents at such crossings would be almost, if not quite, impossible.

Experience constantly teaches the necessity of enforcing the rule, by visiting the penalty of contributory negligence rigidly upon those who disregard it. The safety of passing trains and the lives of passengers traveling therein, which are always endangered when obstructions of any kind are upon the track,

are of quite as much consequence, as the safety and the lives of those who occupy the track even in the momentary act of crossing it. In the present case the charge of the learned judge of the court below is not printed, but so far as we can gather from the answers to the points submitted, he seems to have impressed upon the jury with emphasis, the full terms and import of the rule above stated. But a single error is assigned, and that is to the answer given by the court to one of the points of the defendant. The point was in the following words :

" The fact that a traveler stops and waits until a passing train gets by, does not absolve him or her from looking and listening for trains approaching upon the other track in an opposite direction, and a traveler waiting for a train passing in one direction, must wait sufficiently long so that that train shall not prevent him or her seeing a train approaching in an opposite direction. If, therefore the jury believe that Mrs. Carr, after stopping east of the railroad at Diamond street, while the out train was passing, started across at a time when that train prevented her seeing the incoming train, she was guilty of negligence, and cannot recover."

The point was thus answered : "I have already told you that it was Mrs. Carr's duty, on approaching the track with a view of crossing it, to look and listen, to look in both directions and listen for the approach of trains on either side, and I also said, or it was a necessary inference from it, that if she was delayed in this case, by any cause—the approach of the up train, in the case in hand—it would be her duty again to look in both directions and listen before setting out. I am asked to say to you, however, that if under those circumstances a train which passed up the road shut out any portion of the road from view, it would be her duty to wait until that obstacle to vision was removed, and that, if she did not do so, it would necessarily be negligence and preclude her recovery. What I say is, that it would have been a wise and proper precaution as the event shows. Whether the omission of that precaution be negligence, would depend upon circumstances, and I am not willing to take upon myself the responsibility of saying that under the circumstances in this case, she would necessarily be guilty of negligence in not waiting until the view of the other track was entirely clear. That is for the jury to consider. If the jury find she was negligent, then the consequence would follow which has been already stated." Was there error in this answer ? In a possible condition of the facts of the case, it might not have been erroneous to simply affirm the point. It probably would not have been, if the train going out had been at rest, at, or close to the point of crossing, for then it would have been a physical obstacle which manifestly obstructed vision on the other track.

The conspicuous and palpable character of the obstacle would be direct notice to the plaintiff that she could not exercise her faculty of vision in that direction, and the effect would have been precisely the same as if the obstruction had been of a fixed and permanent character. The case would thus have been brought within the ruling in Railroad *v.* Feller, 3 Norris 226. There the obstruction was a watch-house, and we held the party guilty of contributory negligence, because, although he stopped and looked while in front of it, his looking in one direction was a vain act, and could yield him no information. The same doctrine was held in Railroad *v.* Beale, 23 P. F. S. 504. But here the train going out was not at rest, nor was it at the point of crossing. It had gone beyond the crossing. All the witnesses to the accident agree in this. As to the precise distance it had gone before the locomotive of the down train passed the rear end of the up train, the testimony is not very distinct. The plaintiff, who had stopped on the east side of the road, to await the passage of the up train, says that after the train had passed, she stopped long enough to look, and did look, first up the road and then down, and listened and heard nothing, and then started to cross. She was asked:

Q. Where was the train that was going out when you started to go across ? A. It was a little distance the other side of Diamond, I could not tell you how far, but I saw the back of it was some distance to the other side of Diamond street— the end of the car.

Q. Some distance the other side of Diamond street, you say, the back end of the car ? A. Yes, sir : any how a car's length or about that distance. I could not tell you exactly, it might be more.

Q. I want to get that as clearly and closely as I can. A. That is as close as I can give it to you. It might be more. It was not less, but it might be more.

Q. You saw the end of the car ? A. Yes, sir.

Q. You think it was a about car's length on the other side, of Diamond street ? A. Yes, sir : it might have been more. I won't, swear that it was just a car's length, but it might have been more than a car's length.

Q. How long, in point of time, did you stop there after the train passed ? A. I did not stop any longer than to see that my way was clear, and that there was nothing in my way.

F. J. Ryan, a witness for the defendant, said, " From the woman, where she fell, to where the hind end of the train passed, was about one hundred steps," and added that he stepped it off himself. He had previously testified, " The up train passed right about, I think, five hundred yards away from the

crossing at the time the cow-catcher passed the hind end of the up train."

Joseph Ryan, another witness for the defendant, testified: "The train had got up above Tenth street as the down train was about approaching Tenth." Being further examined, he said, "The down train passed the hind end of the up train about five yards above Tenth street."

Q. Five yards to the north of the Tenth street crossing? A. Yes, sir.

Q. Can you tell where the engine of the down train was when Mrs. Carr slipped and fell? A. The engine of the down train was on the north side of the Diamond street crossing.

John Touser, another witness for the defendant, testified:

Q. Where did the trains pass each other? A. They passed each other just above the Tenth street crossing—about the flag-box there.

Q. When you say they passed each other, do you mean to say the engine passed the hind part of the train? A. The hind car of the up train passed the engine of the down train.

Several witnesses testified that the plaintiff fell on the track of the down train—the west track of the road—and while lying there with her head and body beyond the west rail of the west track, and her feet, or one of them, between the rails, she was run over by the engine of the down train and one foot was cut off.

The witness, Joseph Ryan, in his cross-examination testified:

Q. You say she fell and was lying on the track? A. She fell on the down track; yes, sir, she slipped and fell on the down track.

Q. How long was she lying there before the engine struck her? A. As near as I can recollect about ten, or thirteen or fifteen seconds.

Harry J. Gilmore, another witness for defendant, testified that he was watchman at the Tenth street crossing, which he said was about a hundred steps from the Diamond street crossing, and that he saw the accident. He said, "After that other train (the up train) had passed, and as the other train coming down came to my crossing, I saw the lady cross over, and the lady fell about the time the engine had passed me. By that time when the engine had got down on to that crossing that kept most of the light from me, so that I could not see much more."

Q. Where were the trains as they passed your crossing—that is, where did the engine of the down train pass the hind part of the other train? A. Just before it struck my crossing, the upper side of my crossing. The rear end of the up train had crossed to my crossing about the time that the down engine was coming to my crossing.

[Philadelphia & Reading R. R. Co. *v.* Carr.]

John Welsh, the engineer of the down train, testified that his engine passed the rear end of the up train "just about the end of the planks of the Tenth street crossing," and that his engine was about thirty feet from the plaintiff when she fell.

There was other testimony as to the details of the occurrence, but we have quoted enough for the purpose of disposing of the present question.

. The defendant asked the court to say by the point in question that "If, therefore, the jury believe that Mrs. Carr, after stopping east of the railroad at Diamond street while the out train was passing, started across at a time when that train prevented her seeing the incoming train, she was guilty of negligence, and can not recover."

It is true the hypothesis of the point is the inability of the plaintiff to see the incoming train, on account of the outgoing train, when she attempted to cross, but the point itself is not an abstract proposition. It is not the declaration of a mere legal principle, nor is it even the application of a legal principle to an absolutely fixed and definite condition of facts. In the concrete, the proposition of the point is to fix a definite legal consequence of negligence upon this plaintiff, not for doing or omitting to do something in a precise and determinate state of facts, but in a condition of things which, in essential features, is indeterminate and uncertain.

To illustrate. If, while the outgoing train was at rest, or if, on the very instant of its passing, the plaintiff attempted to cross, she might very well be subject to a rule of duty which would be entirely inapplicable if the train were half a mile away. The rate of speed of each train would also be an element in the problem, which the point entirely ignores. Now it seems clear, the outgoing train was a hundred yards, or thereabouts, distant from the point of crossing, when the engine of the down train passed its rear. How would it be possible for a court to say, as matter of law, that the plaintiff would be guilty of negligence if she crossed the track, knowing that she could not see an incoming train at that distance? The court did leave it to the jury to say whether it was negligence, in fact, for her to cross in such circumstances, and certainly nothing more than that could be asked on behalf of the defendant. As a matter of fact, it can scarcely be questioned that it is easily possible for one to step across a railroad track in safety, although a train is approaching at a distance of three hundred feet. In truth, it would seem from the testimony that the accident in this case was due to the fact, that the plaintiff stumbled, and fell upon the track, and remained prostrate from ten to fifteen seconds before the train reached her, rather than to a lack of time to get across the track. These considerations take the case entirely out of the

domain of legal control, by the application of a fixed rule which determines negligence, as the necessary consequence of definite action, or non-action, in precise circumstances.

The learned judge said all that could be said when he charged, that the act of the plaintiff in crossing as she did, might be negligent according to the circumstances, and the force of these he properly left to the determination of the jury. In this there was no error. We think the time has arrived when it would be well for all railroad companies, whose tracks cross the streets of cities and towns at grade, to protect all the street crossings with gates. The growing practice in this direction deserves commendation.

Judgment affirmed.